501 So.2d 27 (1986)
Daniel L. GINSBERG, Appellant,
v.
Fred A. CHASTAIN, Appellee.
No. 85-1489.
District Court of Appeal of Florida, Third District.
December 30, 1986.
Rehearing Denied February 4, 1987.
*28 Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane, Richard A. Sherman, Fort Lauderdale, for appellant.
Horton, Perse & Ginsberg and Edward A. Perse, Miami, Bernard H. Butts, Hialeah, for appellee.
Before BARKDULL, HENDRY and HUBBART, JJ.
PER CURIAM.
This is an appeal from a final judgment in a legal malpractice action awarding damages for attorney's fees and costs to plaintiff Chastain and taxing costs of the action against defendant Ginsberg. For reasons more fully developed below, we reverse and remand for further proceedings.
Briefly stated, the facts are as follows. This action arose out of an August 6, 1977 agreement signed by Fred Chastain and Daniel Ginsberg's client, Annmarie Ahlers. Ginsberg was Ms. Ahlers' long-time attorney and had handled several matters for her in the years preceding 1977. His law firm also handled an unrelated real estate matter for Chastain and his wife from February to September 1977. Chastain and Ahlers had been romantically involved since 1965, while Chastain was married. In 1977, when their relationship was breaking up, Ahlers contacted Ginsberg to assist her in recovering the approximately $8,836.00 Ahlers had allegedly loaned to Chastain and his corporation, C & S Equipment, Inc., over a period of time.[1] On August 6, 1977, Chastain and his corporate accountant, Osmond Charles Bedell, met with Ginsberg to discuss settling the debt. Chastain signed the agreement which made him, along with his corporation, personally liable for the money owed. Shortly thereafter, he repudiated the agreement by letter, alleging that it was never intended to be final. Ahlers brought suit on the contract, alleging anticipatory breach. Chastain counterclaimed for compensatory and punitive damages, alleging that Ahlers had wrongfully placed a lien on his truck. Ahlers prevailed on the contract action, but Chastain also prevailed on the counterclaim. When the two judgments were set-off against each other, Ahlers received $500.00. She appealed, and this court reversed and remanded for a new trial. Ahlers v. C & S Equipment, Inc., 405 So.2d 464 (Fla. 3d DCA 1981). Chastain was not represented by counsel and did not appear at the new trial. Final judgment in the amount of $22,638.00 was entered against him. Chastain then hired an attorney to resist Ahlers' attempts to collect.
*29 Chastain had filed the instant malpractice action against Ginsberg in September 1978. However, this action had been abated for several years pending the outcome of Ahlers' suit against C & S Equipment and Chastain. The malpractice suit was tried in April 1985, on plaintiff's amended complaint, which alleged, inter alia, that defendant Ginsberg was negligent in representing both Chastain and Ahlers in the contract negotiations and in failing to advise Chastain that the agreement provided for his personal liability on the corporate debt.
Chastain testified at trial that he ran up attorney's fees and costs of $61,000 in defending the $8,836 contract action. After a two day trial, the jury awarded him $60,000 in damages.
Under Florida law, in a malpractice action against an attorney, the plaintiff must prove: (1) the attorney's employment by the plaintiff; (2) the attorney's neglect of a reasonable duty owed to the plaintiff; and (3) that such negligence was the proximate cause of loss to the plaintiff. Lorraine v. Grover, Ciment, Weinstein & Stauber, 467 So.2d 315 (Fla.3d DCA 1985); see Drawdy v. Sapp, 365 So.2d 461 (Fla. 1st DCA 1978); Adams, George & Wood v. Travelers Insurance Co., 359 So.2d 457 (Fla. 3d DCA 1978); Freeman v. Rubin, 318 So.2d 540 (Fla. 3d DCA 1975); Weiner v. Moreno, 271 So.2d 217 (Fla. 3d DCA 1973). Moreover, proof of the first element generally establishes that the attorney owed a duty to the plaintiff. Lorraine, 467 So.2d at 317 n. 3.
In the instant case, the issue then becomes whether Ginsberg's one-time representation of Chastain in the real estate matter entitled Chastain to believe that Ginsberg was also representing him at the August 6, 1977 meeting. We find that it did not.
Chastain testified at trial that he never discussed with Ginsberg his debt to Ahlers; that he never asked Ginsberg to perform any services in connection with the drawing up of the agreement; and that Ginsberg never billed him for any services in connection with the agreement and he (Chastain) never requested a bill. Chastain also admitted that there was no fee agreement relating to the August 6 meeting; that Ginsberg had nothing to do with the letter repudiating the agreement; and that he did not send Ginsberg a copy of that letter.
Additional evidence indicated that Chastain came to the August 6 meeting with Mr. Bedell as his advisor;[2] that he was unwilling to sign the agreement as proposed; that he came prepared to negotiate the terms of the agreement; that he insisted that the amount and due date be changed; that he freely and voluntarily signed the agreement; and that Ginsberg had never represented C & S Equipment, Inc., as an attorney at any time.
The record is devoid of any evidence which would indicate that a client/attorney relationship existed for legal services between Chastain and Ginsberg relating to the August 6 meeting. Chastain therefore has no cause of action against Ginsberg for negligent preparation of an agreement in connection with which Chastain never retained him.
Similarly, Chastain failed to offer any evidence as to what portion of his alleged damages was spent for attorney's fees in connection with his defense of the Ahlers' lawsuit and what portion was spent on behalf of his corporation or in the prosecution of unrelated matters. Further, Chastain presented no evidence to establish that such attorney's fees were reasonable and necessary in order to properly defend against the Ahlers' contract enforcement action on his own behalf. Therefore, the evidence at trial was insufficient as a matter of law. See Cohen v. Cohen, 400 So.2d 463 (Fla. 4th DCA 1981) (award for attorney's fees requires substantial competent evidence).
Thus, we agree with Ginsberg that the trial court erred in denying his motion for a directed verdict on the issue of liability and with regard to Chastain's claim for attorney's *30 fees spent in connection with the Ahlers' lawsuit.
A directed verdict is proper only when the record conclusively shows an absence of facts or inferences from facts to support a jury verdict, viewing the evidence in a light most favorable to the nonmoving party. Schreidell v. Shoter, 500 So.2d 228 (Fla. 3d DCA 1986); Holmes v. Don Mealey Chevrolet, Inc., 468 So.2d 552 (Fla. 5th DCA 1985); Rivera v. Randle Eastern Ambulance Service, 446 So.2d 200 (Fla.3d DCA 1984). No factual determination is therefore required and a judgment must be entered for the movant as a matter of law. Meus v. Eagle Family Discount Stores, Inc., 499 So.2d 840 (Fla. 3d DCA 1986) (order denying motion to dismiss); see National Car Rental System, Inc. v. Bostic, 423 So.2d 915 (Fla. 3d DCA 1982).
In the instant case, since there is no evidence that could in law support a verdict for Chastain, the final judgment is reversed with instructions to direct a verdict in favor of Ginsberg. In view of our holding, we do not reach the other points raised on appeal.
With regard to the taxation of costs against Ginsberg, our reversal of the final judgment awarding damages to Chastain also necessitates reversal of the judgment as to costs.
Reversed and remanded, with instructions.
NOTES
[1] Chastain alleged that Ahlers never loaned money to him personally, but only to the corporation.
[2] Mr. Bedell testified at trial that Ginsberg told him that he was representing Ahlers at the meeting and that Chastain was aware that Ginsberg was representing only her.